J-A34011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| MAWUYRAYRASSUNA EMMANUEL YAOGAN NOVIHO | |
| Appellant | No. 394 MDA 2015 |

Appeal from the Judgment of Sentence January 27, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0004200-2013

BEFORE:  PANELLA, J., OTT, J., and JENKINS, J.

JUDGMENT ORDER BY PANELLA, J.          **FILED FEBRUARY 17, 2016**

Appellant, Mawuyrayrassuna Emmanuel Yaogan Noviho, appeals from the judgment of sentence entered by the Honorable David L. Ashworth, Court of Common Pleas of Lancaster County. We affirm.

We assume the parties' familiarity with the facts and procedural history of the case. For a recitation of the facts and procedural history of this matter, we direct the reader to the opinion of the trial court. ***See*** Trial Court Opinion, 4/7/15, at 1-3.

We have reviewed the briefs of the parties, the certified record, and the trial court opinion. The trial court, the Honorable David L. Ashworth, has authored an opinion that ably disposes of the issues presented on appeal. We affirm based on that opinion. ***See id***., at 3-32.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/17/2016

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
C R I M I N A L

COMMONWEALTH OF PENNSYLVANIA :
                      :
           v.         :          No. 4200 - 2013
                      :
MAWUYRAYRASSUNA EMMANUEL :
YAOGAN NOVIHO          :

OPINION SUR PA. R.A.P. 1925(a)

BY:   ASHWORTH, J., APRIL 7, 2015

Mawuyrayrassuna Emmanuel Yaogan Noviho has filed a direct appeal to the

Superior Court of Pennsylvania from the judgment of sentence imposed on January 27,

2015. This Opinion is written pursuant to Rule 1925(a) of Pennsylvania Rules of

Appellate Procedure, and for the following reasons, this Court requests that this appeal

be denied.

I.    **Background**

On June 7, 2013, Noviho was charged with two counts of homicide by vehicle,[1]

aggravated assault by a vehicle,[2] and related summary offenses as a result of conduct

arising out of an incident on November 11, 2012. It was alleged that Noviho

unintentionally caused the deaths of two people and the serious bodily injury of another

as a result of his operation of a tractor while violating the Motor Vehicle Code in a

---

[1] 75 Pa. C.S.A. § 3732(A).

[2] 75 Pa. C.S.A. § 3732.1(A).

reckless or grossly negligent manner. Katie West was the operator of the other involved vehicle and she suffered serious bodily injury. Joshua A. West, her husband, was the front seat passenger and he was deceased as a result of the crash. Joshua C. West, her three-year-old son, who was in a child safety seat in the right rear passenger seat, also died from injuries sustained in the crash. Mrs. West's five-year-old daughter was in a booster seat in the left rear passenger seat and she suffered only minor injuries.

Following a six-day trial, the jury found Noviho not guilty of the homicide by vehicle and aggravated assault by vehicle charges. Following the jury's rendering of its verdict, this Court, sitting in judgment on the remaining summary charges, convicted Noviho of the Motor Vehicle Code violations of driving too slow for conditions, failure to use flashing signals, and moving a vehicle unsafely.[3][4] (N.T. at 1093-94.) Noviho was immediately sentenced to pay the statutory fines of $25.00 for each offense, plus costs.[5] (Id. at 1094.)

A timely notice of appeal to the Superior Court of Pennsylvania was filed on February 26, 2015. Pursuant to this Court's directive, Noviho furnished a concise statement of matters complained of on appeal which raises the following issues on

---

[3]75 Pa. C.S.A. § 3364(a), 75 Pa. C.S.A. § 4305(a), (b)(1), and 75 Pa. C.S.A. § 3333, respectively.

[4]Noviho was found not guilty of failure to use required lighted lamps, 75 Pa. C.S.A. § 4305(c), and the additional count of slow moving vehicle was withdrawn by the Commonwealth as duplicative. (Notes of Trial Testimony (N.T.) at 1093.)

[5]Section 6502 of the Motor Vehicle Code provides, in relevant part, that "[e]very person convicted of a summary offense for a violation of any of the provisions of this title for which another penalty is not provided shall be sentenced to pay a fine of $25." 75 Pa. C.S.A. § 6502(a).

2

appeal: (1) the Court erred in granting the Commonwealth's motion in limine; (2) the Court erred in excluding from evidence photographs taken at the scene of the accident; (3) the verdict on Count 5 (too slow for conditions) was against the weight/sufficiency of the evidence; (4) the verdict on Count 7 (use of flashing signals) was against the weight/sufficiency of the evidence; (5) the verdict on Count 8 (moving vehicle safely) was against the weight/sufficiency of the evidence; and (6) the Court erred in failing to allow the jury to indicate on the verdict slip which, if any, specific violation(s) of the Motor Vehicle Code occurred. (*See* Concise Statement at ¶¶ 1-6.) I will address these issues in reverse order.

## II. Discussion

### A. Jury Interrogatories

Noviho claims this Court erred by failing to have special interrogatories for the jury to determine whether the specific Motor Vehicle Code violations which were essential elements of the charged felony offenses were proven. (*See* Concise Statement at ¶ 6.)

> A trial court possesses broad discretion in phrasing its instructions to the jury and will not be found to have abused its discretion unless the instructions fail to clearly, adequately, and accurately present the law. . . . Proper appellate review dictates th[e] [Superior] Court consider the entire charge as a whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue. . . . Moreover, an appellant's belief that a court's instructions should contain additional explanation or his chosen dicta will not render a jury charge defective.

**Commonwealth v. Hunzer**, 868 A.2d 498, 516 (Pa. Super. 2005) (internal quotations

3

and citations omitted). In **Hunzer**, the Superior Court found that where the trial court utilized the standard jury instruction for the offense charged (rape) and properly instructed on the elements required for that offense, the defendant's request for a special interrogatory as to a particular element of the offense (penetration) was properly denied.

Similarly, in the instant case, I used the standard jury instructions for the two felony offenses charged (homicide by vehicle and aggravated assault by vehicle), and instructed the jury as to the elements required to be proven beyond a reasonable doubt for each. (N.T. at 1028-40.) One common element for each felony was that Noviho committed a violation of the Motor Vehicle Code. (Id. at 1029, 1037.) The six underlying traffic regulations alleged to have been violated by Noviho were set forth at length during the charge (Id. at 1031-35), and repeated in response to questions by the jury during their deliberations. (Id. at 1052-56, 1081-82.) I concluded my initial instructions by noting: "You may find all, you may find none, but in order to find the defendant guilty, you must find beyond a reasonable doubt that he has been proven guilty of violating *at least one* of the Motor Vehicle Code motor vehicle regulations." (Id. at 1039-40 (emphasis added).)

As the jurors were clearly, adequately and accurately instructed on the elements for each charged offense, there was no trial court error in refusing to have special interrogatories for the jury to determine those elements. See **Hunzer**, *supra*. This allegation of error should be rejected.

4

Moreover, to allow the jury to specifically rule on the underlying motor vehicle violations would have been improper as no right to a jury trial historically or constitutionally is afforded an accused for a summary offense. The United States and Pennsylvania Constitutions require that only "one accused of a 'serious offense' be given a jury trial." **Commonwealth v. Mayberry**, 459 Pa. 91, 97, 327 A.2d 86, 89 (1974). "The question becomes whether the crime charged . . . is 'serious'. The test is clear. The decisions of the Supreme Court of the United States 'have established a fixed dividing line between petty and serious offenses: those crimes carrying more than six months sentence are serious and those carrying less are petty crimes.'"[6] Id. at 98, 327 A.2d at 89.

The Motor Vehicle Code violations at issue in this case do not provide for a sentence of imprisonment. Noviho was subject only to a fine for his summary offenses. Therefore, the right to trial by jury was not implicated, and he was not entitled to a trial by jury on the summary offenses. *See* **Commonwealth v. Kincade**, 358 Pa. Super. 591, 597, 518 A.2d 297, 300 (1986). *See also* **Commonwealth v. Smith**, 868 A.2d 1253, 1257 (Pa. Super. 2005). This Court was right to take the summary motor vehicle violations from the jury's consideration in this case.

Noviho further charges that the Court "abused its discretion in consulting with jurors prior to [the] Court's declaration of verdict regarding the Summary Offenses."

---

[6]Under the definition in the Crimes Code, a "summary offense" is an offense "so designated in this title, or in a statute other than this title; or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than 90 days." **Commonwealth v. Johnson**, 878 A.2d 973, 977 (Pa. Cmwlth. 2005) (*quoting* 18 Pa.C.S.A. § 106(c)).

(See Concise Statement at ¶ 6.) Following the jury's verdict in this case, the Commonwealth presented the summary offenses for a determination by the Court. (N.T. at 1090.) After hearing argument from counsel regarding the propriety of ruling on those summary charges (Id. at 1090-91), I called a recess to allow counsel to prepare their summations and to allow me to address the jurors in Chambers.[7] (Id. at 1091-92.) No objection was made by defense counsel at that time to my meeting with the jurors and thanking them for their service. (Id. at 1092.) Nor was a motion for mistrial made before a verdict on the summary charges was directed after I re-entered the courtroom. (Id. at 1093.) Failure of Noviho to object at trial to this alleged procedural impropriety at trial waived that objection on appeal. *See* **Commonwealth v. Romesburg**, 353 Pa. Super. 215, 223, 509 A.2d 413, 417 (1986), and cases cited therein.

## B.    Weight/Sufficiency of the Evidence

Noviho has raised the issue of whether the evidence was sufficient to support his summary convictions, given that the jury did not find the violations sufficient to convict on the felony charges. (*See* Statement of Errors at ¶¶ 3-5; *see also* N.T. at 1090, 1094.) Noviho also argued at trial that the Court's verdict of guilty on the summary motor vehicle charges is inconsistent with the jury's verdict of not guilty on the other felony offenses that stemmed from the same alleged course of conduct. (*See* N.T. at 1094-96.)

---

[7]There is nothing that prevents a trial judge from meeting with the jurors to thank them for their service following their discharge from the case. My meeting with the jurors, outside of Noviho's presence, occurred after the jury had delivered its unanimous verdict, and after the verdict was recorded by the clerk. (N.T. at 1088-90.)

Our appellate courts have recognized that a criminal defendant who has been charged with both a summary offense and a felony offense may be placed in the unusual situation of having a trial before two separate and distinct fact finders – a jury on the felony charge and a trial judge on the summary charge. *See, e.g.,* **Commonwealth v. Barger**, 956 A.2d 458, 459 (Pa. Super. 2008) (rape (F) and harassment (S)); **Commonwealth v. Wharton**, 406 Pa. Super. 431-32, 436, 594 A.2d 696, 697 (1991) (involuntary manslaughter (F) and driving at unsafe speed (S)); **Commonwealth v. Bowman**, 400 Pa. Super. 525, 526, 583 A.2d 1239, 1240 (1990) (accidents involving death or personal injury (F) and driving under suspension (S)). *See also* **Commonwealth v. Costa-Hernandez**, 802 A.2d 671 (Pa. Super. 2002) (DUI (M) and driving under suspension (S)); **Commonwealth v. Long**, 753 A.2d 272 (Pa. Super. 2000) (same); **Commonwealth v. Yachymiak**, 351 Pa. Super. 361, 505 A.2d 1024 (1986) (same). Such a consolidated jury/bench trial gives rise to the possibility of inconsistent factual findings. **Barger**, *supra* at 460. However, even if the judge's findings of fact, which support a conviction on the summary violation, do not comport with the jury's findings, which result in an acquittal of the felony charge, the judge's findings will not be disturbed on appeal, as the judge is under no duty to defer to the jury's findings on common factual issues. **Yachymiak**, *supra* at 366-67, 505 A.2d at 1026-27. *See also* **Wharton**, *supra* at 437, 594 A.2d at 699. Thus, inconsistent verdicts are permissible in Pennsylvania. **Barger**, *supra* at 460-61.

As I explained at trial, however, the two verdicts in this case are not necessarily inconsistent. A conviction for homicide by vehicle would have necessitated three

7

findings of fact: (1) Noviho caused the death of Joshua Alan West and/or Joshua Charles West (2) by acting recklessly or with gross negligence, (3) while violating a Motor Vehicle Code regulation. *See* 75 Pa. C.S.A. § 3732(a). My findings that Noviho violated three provisions of the Motor Vehicle Code are inconsistent only if the acquittal was based on the jury's doubt that Noviho operated his vehicle in violation of a driving regulation rather than on the absence of the other two elements of the offense. As I noted to counsel:

> [T]he jury . . . asked a number of questions with regard to the second element, that the defendant acted recklessly or with gross negligence.[8] They asked a number of questions, and they could very well have found a violation of the Vehicle Code and then found, however, that the conduct of the defendant was merely negligent or something else and not grossly negligent or reckless, as required by homicide by vehicle.

(*See* N.T. at 1096.) The jury in this case apparently struggled with the question of whether Noviho's conduct was reckless or grossly negligent. The verdicts in this case were not necessarily inconsistent. The "[Superior] Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is evidence to support the verdict." **Commonwealth v. Swann**, 431 Pa. Super. 125, 128, 635 A.2d 1103, 1104-05 (1994). Therefore, I will address the sufficiency of the evidence as to each summary offense.

---

[8]The jury, in fact, asked that the second element of homicide by vehicle regarding recklessness or gross negligence be reread four times during their deliberations. (*See* N.T. at 1057, 1060, 1081, 1085.)

8

### 1. Count 5 – Too Slow for Conditions, 75 Pa. C.S.A. § 3364(a)

Noviho was first found guilty of the summary offense of driving too slow for conditions. Section 3364 of the Motor Vehicle Code provides in relevant part:

> **(a) Impeding movement of traffic prohibited. –** Except when reduced speed is necessary for safe operation or in compliance with law, no person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic.

75 Pa. C.S.A. § 3364(a). To establish a violation of § 3364, the Commonwealth does not have to prove the speed at which the defendant was driving. **Commonwealth v. Robbins**, 441 Pa. Super. 437, 657 A.2d 1003 (1995). However, an element of the offense is proof that the defendant's slow driving speed impeded the flow of traffic. Id.

Noviho claims the Commonwealth failed to establish that his "'slow speed was not necessary for safe operation' where there was no testimony presented as to the reasons for [Noviho's] speed or that the 'reasonable movement' of traffic was impeded." (See Statement of Errors at ¶ 3.) This argument must be rejected as the evidence clearly and unequivocally established both the reason for Noviho's slow speed and its impact on traffic.

It is undisputed that the applicable speed limit on the relevant stretch of Route 222 is 65 mph. (See N.T. at 589.) The Commonwealth's accident reconstruction expert, Officer Bryan Kondras, conclusively determined that Noviho was operating his tractor at 17 mph at the time of impact with the West vehicle. (Id. at 618, 620.) Noviho initially reported to the police that he was driving between 50 and 55 mph in a known 65 mph zone. (Id. at 729, 745; see also Commonwealth Exhibits 21 & 22.) The expert

9

evidence would later establish that, in fact, Noviho had been traveling at speeds of 55 mph 1 minute and 44 seconds *prior* to the collision. (Id. at 615.) However, Noviho then brought his tractor to a stop, either on the roadway or on the shoulder of the road,[9] for 26 seconds. (Id. at 616-17.) Noviho re-entered the highway or resumed his travel just 16 seconds prior to the crash. (Id. at 618-19; *see also* Commonwealth Exhibit 19.) During that short time, Noviho only accelerated his tractor over 197 feet to a maximum speed of 17 mph at the time of impact. (Id. at 617-18, 621-22; *see also* Commonwealth Exhibit 19.) The Commonwealth's expert testified that, from the forensic evidence, Noviho was "not in a hurry to get up to speed." (Id. at 624.) The expert was also able to determine that there were no mechanical defects or malfunctions in the tractor, no roadway defects and no adverse weather conditions that might have contributed to the slow speed of the tractor and the ultimate crash. (Id. at 638.)

From this evidence, the reason for Noviho's slow speed was sufficiently established. Noviho pulled into traffic on a 65 mph highway from a dead stop and did not accelerate sufficiently to avoid impact with another vehicle on the roadway who was traveling with the normal flow of traffic.[10] (Id. at 626-27.) The slow speed was clearly not "necessary for safe operation or in compliance with law." *See* 75 Pa. C.S.A.

---

[9]The Commonwealth expert testified only that the tractor was stopped either on the northbound roadway or on the shoulder of Route 222 197 feet before the Landis Valley Road overpass where the impact occurred. (N.T. at 617, 618, 621.) The forensic data and reconstruction analysis could not definitively place the stopped tractor either in the lane of travel or outside the lane of travel. (Id. at 625.) There is an improved shoulder in that location but no designated parking area or rest area. (Id. at 616-17.)

[10]Both James Schlinkman and Michele Levisky testified that they were driving at approximately 70 mph in the 65 mph zone. (N.T. at 247, 382.) According to these eyewitnesses, the West vehicle was traveling between 65 and 70 mph. (Id.) Thus, the West vehicle was traveling with the normal flow of traffic at the time of impact.

§ 3364(a). To the contrary, the Commonwealth expert testified that safety required Noviho to drive his tractor on the improved shoulder for a sufficient distance until he was operating at a safer speed to enter the highway and merge into traffic.[11] (Id. at 627.)

In order to constitute a violation of § 3364(a) of the Motor Vehicle Code, the Commonwealth had to further establish that Noviho's slow speed "impede[d] the normal and reasonable movement of traffic" on Route 222. See 75 Pa. C.S.A. § 3364(a). As for the "movement of traffic," there was abundant testimony to the presence of other vehicles on the roadway while Noviho was driving at the prohibited slow rate of speed. Noviho himself reported to the police that the traffic volume on Route 222 at the time of the collision was "normal," thus, indicating the presence of other vehicles on the roadway with him. (N.T. at 730.) Moreover, there was testimony at trial from two eyewitnesses to the collision who were traveling beside and behind the West vehicle at the time of impact.[12] (See Id. at 245-50; 382-91.) Clearly, there was sufficient evidence to establish the presence of traffic on Route 222 to impede.[13]

---

[11]The improved berm continued from where Noviho was first stopped, 197 feet south of the Landis Valley Road overpass, to beyond the point where the tractor came to stop after the collision. (N.T. at 598.)

[12]James Schlinkman testified that the traffic conditions on Route 222 were "[l]ight to moderate. Not real heavy." (N.T. at 380.) Michele Levisky also testified that there were vehicles ahead of her as she was driving in the left lane of Route 222 just prior to the collision. (Id. at 248-49.)

[13]The majority of the decisions in the Pennsylvania Common Pleas Courts hold that when determining whether slow speed is a violation (or may serve as reasonable articulable suspicion for a stop) there must be some testimony as to the presence of other vehicles on the roadway besides the defendant's vehicle and perhaps the police officer's vehicle. See **Commonwealth v. McGrath**, 78 Bucks Co. L. Rep. 212 (2004) (traffic stop not lawful where officer testified that there was no other traffic on roadway during his interaction with defendant,

11

The question for the Court then was when does a slow-moving vehicle "impede" the normal movement of traffic. This Court has found only two published Pennsylvania appellate court decisions interpreting this statute. In **Commonwealth v. Robbins**, 441 Pa. Super. 437, 657 A.2d 1003 (1995), the Superior Court affirmed the defendant's conviction of impeding the "normal and reasonable movement of traffic" where he was driving between 18 and 28 mph below the posted maximum speed limit in a no-passing zone and causing a large number of vehicles to be backed up behind him. The Court explained:

> All that needed to be shown was that [Robbins] was operating his vehicle at such a slow speed that it was an impediment to the normal and reasonable movement of traffic. The testimony of the two officers indicated that [Robbins] was driving very slowly at a rate of speed of about 17 miles per hour through no-passing zones with speed limits of 35 and 45 miles per hour. *The officers also mentioned that between 18 or 20 cars were trailing behind [Robbins] and the operators of those vehicles were angry, raising their fists and honking their horns at [Robbins].*

Id. at 440, 657 A.2d at 1004 (emphasis added). This decision suggests that the driver of a slow-moving vehicle impedes traffic when his or her reduced speed interrupts the "normal and reasonable movement of traffic" by blocking or backing up traffic.

---

so slow rate of speed could not have impeded the normal movement of traffic); **Commonwealth v. Haugh**, No. C.A. 03-440, *slip op.* (Butler Co., June 17, 2003) (no reasonable suspicion of a violation of § 3364 where police officer testified there was no other traffic on the road during the four miles that he followed defendant driving at a slow speed); **Commonwealth v. Memminger**, No. 1481 Criminal 1999, *slip op.* (Monroe Co., Feb. 23, 2000) (no reasonable suspicion of a violation of § 3364 where the only traffic on highway at the time of the stop for slow speed was defendant's car and the police car that had been following him for five miles); *cf.* **Commonwealth v. Faustner**, No. 1742 of 2005, *slip op.* (Lehigh Co., Dec. 28, 2005) (summary vehicle code stop for "impeding traffic" lawful where no "civilian traffic" on roadway at the time, but only police officer's vehicle).

12

Other jurisdictions that have considered impeding traffic statutes, which are nearly identical to Pennsylvania's statute, have also focused on whether a driver's slow speed blocked or otherwise backed-up traffic. *See, e.g.*, **State v. Pray**, 5 Kan. App.2d 173, 613 P.2d 400 (1980) (holding that driving farm combine 12-15 mph on a state highway with a 13-vehicle back-up provided sufficient evidence to find the driver guilty of impeding the normal and reasonable movement of traffic); **State v. Lewis**, 980 So.2d 251 (La. App. 3rd Cir. 2008) (holding valid traffic stop where the speed limit was 70 mph and there were 8 cars waiting in the passing lane for a vehicle traveling less than the speed limit to move over so that they could pass by, thus impeding the normal flow of traffic); **State v. Haataja**, 611 N.W.2d 353 (Minn. Ct. App. 2000) (holding that an officer had reasonable suspicion to initiate a stop of a car where the driver was traveling 10-15 mph slower than the posted maximum speed limit and other cars were backed-up behind defendant); **State v. Benders**, 334 Mont. 231, 146 P.3d 751 (2006) (holding that driving approximately 30-45 mph under the posted maximum speed limit and a build-up of at least 4 vehicles gave officer "sufficient information, under the totality of the circumstances, to establish particularized suspicion that [defendant] was violating the law against impeding traffic"); **Moreno v. State**, 124 S.W.3d 339 (Tex.App. 2003) (holding that driving 25 mph in 45 mph zone provided officer with probable cause to stop vehicle for impeding traffic where officer also observed traffic backed up behind defendant's vehicle due to slow driving). Clearly, a driver can "impede" or interrupt the normal and reasonable movement of traffic if he or she causes other vehicles to come to a stop or a crawl.

13

Employing similar reasoning, our Superior Court concluded, in the second published appellate court decision interpreting § 3364(a), that when a driver's slow speed does not affect other motorists then the driver is not impeding the normal and reasonable movement of traffic. In **Commonwealth v. Lana**, 832 A.2d 527 (Pa. Super. 2003), the Superior Court found a traffic stop based on § 3364 to be without probable cause where a police officer stopped a motorist with out-of-state tags driving 5 to 10 mph in a 20 mph zone at 4:00 a.m. on a residential street in a high-crime area of Philadelphia. Citing to the record, the Court summarily concluded that "[n]o traffic was impeded by the speed of appellant's vehicle." Id. at 529. The Court further noted that the officer followed the slow-moving motorist "for a distance of just one block, barely enough time in which to fasten one's seat belt and adjust the mirrors." Id. As there was no evidence of the slow driving affecting other traffic, the Court held the officer lacked probable cause to execute a traffic stop of the defendant. Id. at 529-30. *See also* **Commonwealth v. Henderson**, 87 Bucks Co. L. Rep. 478 (2014) (stop unlawful where officer testified other traffic on roadway minimal and not impacted or affected in any way by defendant's sudden and rapid deceleration to an almost full stop in the middle lane of a three-lane highway); **Commonwealth v. Puskar**, No. 1859 of 2005, *slip op.* (Fayette Co. May 18, 2006) (where officer testified there was other traffic on the road but he had no recollection as to whether any vehicles were following behind defendant, court concluded officer had no knowledge that slow speed was impeding 'the normal and reasonable movement of traffic").

Other states have similarly decided that when a driver's slow speed does not have an effect upon other motorists on the roadway then the driver is not impeding the

14

flow of traffic. *See, e.g.*, **Agreda v. State**, 152 So.3d 114 (Fla. Dist. Ct. App. 2014) (concluding that detective lacked legal basis for traffic stop for driving at such a slow speed as to impede the normal flow of traffic, even if five other vehicles were following behind the vehicle, where highway had two lanes in each direction, traffic was otherwise light, detective had no trouble passing all the vehicles to reach the lead vehicle, and vehicle's speed of 45 mph was within the permissible range for the highway); **People v. Beeney**, 181 Misc.2d 201, 694 N.Y.S.2d 583, 586 (N.Y. Co. Ct. 1999) (noting that "the dispositive factor when determining whether slow speed is a violation (or may serve as reasonable articulable suspicion for a stop) is its effect upon other drivers"); **State v. Bacher**, 170 Ohio App. 3d 457, 867 N.E.2d 864 (2007) (concluding that officer lacked reasonable suspicion to initiate a stop of defendant's vehicle for impeding or blocking traffic when there was no evidence in the record that defendant's slow speed affected other drivers); **State v. Tiffin**, 202 Or.App. 199, 121 P.3d 9 (2005) (where the speed was not significantly below the speed limit, there were no other cars on the road, and, if the officers' vehicle was blocked at all, it was for a very short distance, it cannot be said that defendant was blocking or impeding the normal and reasonable flow of traffic).

Clearly, the duty imposed by § 3364(a), and other statutes around the country like it, that proscribes against the slow speed of traffic upon state highways is for the purpose of protecting against the risk that a slow-moving vehicle would block traffic or create a dangerous condition on a highway designed and customarily used to carry fast-moving traffic. This is precisely what happened in the instant case. The Commonwealth established (1) Noviho's operation of a motor vehicle below the posted

15

speed limit, (2) which operation, impeded the "normal and reasonable movement of traffic."

Here, Noviho was driving on a controlled access, two-lane, one-way portion of the highway. He knew or should have known that other vehicles were likely to be driving at speeds within the maximum permitted by statute – 65 mph. He was at a place where there was, insofar as the road was concerned, no apparent reason for curtailment of speed (such as warnings, obstructions, entrances, exits, etc.) or other existing condition which would cause a following motorist to anticipate that a driver in front would be driving at, or would slacken to, an unusually slow speed. Coupled with this is the important circumstance that Noviho had been driving at 55 mph. Within a two minute period, he brought his truck from 55 mph to a dead stop and then started his movement again, all the while without giving any warning, by use of his hazard lights, of his stopping or starting. He knew or should have known, by simply looking, that there were motorists behind him.[14] This conduct was voluntary on his part and was not necessary for safe operation or to comply with any law.

Under the circumstances of this case, there existed a substantially dangerous condition as created by Noviho's below speed limit driving that not just impeded traffic, but, as required by law, impeded the normal and reasonable movement of traffic and resulted in a fatal collision.[15] We, therefore, could conclusively determine from the facts

---

[14]Both eyewitnesses to the collision testified that the headlights on the West vehicle were on and illuminated the tractor at the time of impact. (N.T. at 245, 248, 251, 383, 385.)

[15]Moreover, the West vehicle could not safely pass the slow-moving tractor in the right lane as testimony established a passing car in the left lane in the moments prior to impact. (N.T. at 245, 247-48.)

16

as presented by the Commonwealth that Noviho was in violation of § 3364 of the Motor Vehicle Code.

2. **Count 7 – Vehicular Hazard Signal Lamps, 75 Pa. C.S.A. § 4305**

Noviho was also convicted at Count 7 of driving without the required vehicular hazard signal lamps. Section 4305 of the Motor Vehicle Code provides, in relevant part, as follows:

> **(a) General rule.–** Simultaneous flashing of the two front and two rear signal lamps shall indicate a vehicular traffic hazard. The driver of a motor vehicle equipped with simultaneous flashing signals shall use the signals when the vehicle is stopped or disabled on a highway, except when the vehicle is stopped in compliance with a traffic-control device or when legally parked. . . .
>
> **(b) Use outside business and residence districts.–** Outside of a business or residence district:
> (1) The driver of a motor vehicle or combination equipped with simultaneous flashing signals shall use the signals when the vehicle is unable to maintain a speed of at least 25 miles per hour because of weather, grade or other similar factors or is unable to maintain a speed consistent with the normal flow of traffic.
> . . .
>
> **(c) Use below minimum speed limit.–** The driver of a motor vehicle or combination equipped with simultaneous flashing signals shall use the signals when the vehicle is not maintaining at least the minimum speed established in accordance with the provisions of section 3364 (relating to minimum speed regulation).

75 Pa. C.S.A. § 4305(a)-(c).

Noviho was originally charged at Count 7 with violating subsection (c) above and, accordingly, Count 7 is identified on the Information as "Use Below Minimum Speed Limit." However, during the trial in this matter, on oral motion of the Commonwealth's

17

attorney and without objection from defense counsel, the Information was amended at Count 7 to delete subsection (c) and to add subsections (a) and (b)(1). (N.T. at 62; *see also* N.T. at 74.) I made a notation on the Information to reflect these changes regarding the applicable subsections but I did not change the caption for Count 7 which read: "Use Below Minimum Speed Limit." This explains why, when I pronounced the verdict on Count 7, I referred to "use below minimum speed limit." (Id. at 1094.) In fact, Noviho was found guilty of violating subsections (a), "General Rule," and (b)(1), "Use outside business and residence districts."

Under the Pennsylvania Motor Vehicle Code, the use of hazard lights to warn of a traffic hazard is mandatory. Pursuant to § 4305(a), "[t]he driver of a motor vehicle equipped with simultaneous flashing signals *shall* use the signals when the vehicle is stopped or disabled on a highway, except when the vehicle is stopped in compliance with a traffic-control device or when legally parked." 75 Pa. C.S.A. § 4305(a) (emphasis added). The Commonwealth, therefore, was required to establish the following three facts: (1) Noviho's tractor was stopped, (2) on a highway, (3) without his flashing signals activated.

Route 222 constitutes a "highway" under § 4305 because the street is publicly maintained and open to the public for vehicular traffic.[16] Moreover, the tractor met the definition of "stopped" under § 4305. "Stopped" includes "any halting even

---

[16]Section 102 of the Vehicle Code defines highways as "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel. . . ." 75 Pa. C.S.A. § 102. Thus, whether Noviho was on the traveled portion of the roadway or on the berm or shoulder, he was nonetheless on the highway.

18

momentarily." 75 Pa. C.S.A. § 102.[17] The use of the word "any" accounts for all stops regardless of the duration. Noviho's tractor was "stopped," for purposes of § 4305(a), on Route 222 for 26 seconds. (N.T. at 616.) The statute does provide for exceptions such as stopping to "avoid conflict with other traffic" or to comply "with the directions of a police officer or traffic-control sign or signal." 75 Pa. C.S.A. § 102. However, there was no evidence presented to suggest that Noviho stopped his tractor on the highway to avoid conflict with other traffic. Nor was there evidence to indicate that Noviho was merely abiding by traffic signs, signals, or officer directions.

Lastly, there was sufficient evidence to find that, when Noviho's tractor was stopped on the highway for 26 seconds, he did not utilize his flashing signals. Both eyewitnesses to the collision testified that they never saw a vehicle pulled off to the side of the roadway ahead of them with *any* lights on. (N.T. at 261, 383-84.) It was the consistent testimony of both drivers that the object which the West vehicle struck came out of the darkness. (Id. at 245-46, 249-51, 260, 383.)

Based upon all of the evidence provided at trial, Noviho was properly found guilty of the summary offense of being "stopped" on a "highway" without using his flashing signals to warn other drivers of a traffic hazard.[18] 75 Pa. C.S.A. § 4305(a).

---

[17]Section 102 of the Vehicle Code defines "stopped" as "any halting even momentarily of a vehicle, whether occupied or not, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic-control sign or signal." 75 Pa. C.S.A. § 102.

[18]The evidence would also have supported a violation of subsection (a) for failure of Noviho to use his flashing signals to warn of a traffic hazard *after* the collision when he was stopped on the shoulder of Route 222 while rescue efforts were being conducted on the occupants of the West vehicle. (*See* N.T. at 206, 232-33, 253, 255, 392, 604; *see also* Commonwealth Exhibit 7.) The testimony of four eyewitnesses that Noviho failed to activate his flashers on the tractor is in stark contrast to Noviho's two statements to the police the night of

19

Noviho was also charged with the related vehicular hazard signals offense found in § 4305(b)(1). Pursuant to that subsection, when outside business and residential areas,[19] "[t]he driver of a motor vehicle or combination equipped with simultaneous flashing signals shall use the signals when the vehicle is unable to maintain a speed of at least 25 miles per hour because of weather, grade or other similar factors or is unable to maintain a speed consistent with the normal flow of traffic." 75 Pa. C.S.A. § 4305(b)(1). Noviho claims the evidence at trial failed to establish that he was "unable" to maintain a speed consistent with the normal flow of traffic where there was no testimony presented as to whether his vehicle was unable to "maintain speed." (*See* Statement of Errors at ¶ 4.)

The assumption by the Court is that Noviho is suggesting he was accelerating at the time of impact with the West vehicle and had not reached his maintainable speed. The statute requires the use of hazards when a vehicle is "unable to maintain a speed consistent with the normal flow of traffic." 75 Pa. C.S.A. § 4305(b)(1). Whether accelerating or not,[20] Noviho was driving in a designated lane of travel on a high-speed

---

the accident that he activated his "emergency lights" or "four-way flashers" after he "felt an impact from behind." (Id. at 729, 744, 745.)

[19]The testimony conclusively established that this section of Route 222 was outside business and residential areas, ran through a rural stretch of countryside, and was very dark. (N.T. at 116-17, 159, 210, 243-44, 381, 589-90.)

[20]What distinguishes this case is the fact that Noviho was not entering the highway from an entrance ramp which allows a vehicle to accelerate to the appropriate speed to merge into oncoming traffic. Such an approach lane also alerts highway traffic to the possibility of other vehicles entering the roadway at a reduced speed, although the vehicle entering the highway must always yield to oncoming traffic. *See* 75 Pa. C.S.A.§ 3321. In this case, Noviho stopped his vehicle on the highway and was attempting to re-enter the flow of traffic. He failed to use the improved shoulder as an acceleration ramp to achieve even a moderately safe speed before entering the highway and merging into traffic. (*See* N.T. at 627.)

20

road at a substantially subnormal speed that was clearly not consistent with the normal flow of traffic which was traveling at speeds of approximately 65 to 70 mph. (*See* N.T. at 247, 382.) Because Noviho could not maintain a speed consistent with the traffic flow on Route 222, he was required by law to activate his hazard lights to alert drivers to a dangerous condition on the highway.

Again, the testimony of the two eyewitnesses to the collision established the absence of Noviho's hazard lights. James Schlinkman testified that immediately prior to impact, he saw neither hazard lights, running lights, nor tail lights on the tractor. (N.T. at 383-84.) Similarly, Michele Levisky stated she saw no flashing hazards, no headlights, and no steady tail lights. (Id. at 251, 255.) This evidence conclusively established that Noviho failed to use his flashing signals when he was driving on Route 222 at a speed significantly less than the normal flow of traffic for a 65 mph zone.

### 3. Count 8 – Move Vehicle Unsafely, 75 Pa. C.S.A. § 3333

Lastly, Noviho challenges this Court's verdict on the summary charge of failing to move his vehicle safely from a stopped position on the roadway. Section 3333 of the Motor Vehicle Code provides: "No person shall move a vehicle which is stopped, standing or parked unless and until the movement can be made with safety." 75 Pa. C.S.A. § 3333. Noviho charges that the Commonwealth failed to establish beyond a reasonable doubt "that the movement of [his] vehicle onto the roadway was unsafe where there was no testimony as to *when* the vehicle entered the roadway." (*See* Statement of Errors at ¶ 5 (emphasis added).)

21

To the contrary, there was exhaustive expert testimony from which the finder of fact could determine when Noviho entered the roadway. The electronic control module (ECM) from the tractor provided detailed data for the two-minute period of time surrounding the collision. (N.T. at 610-11.) At precisely 17 seconds before impact with the West vehicle, Noviho's tractor was in a stopped or idling position, with the brakes and clutch engaged. (Id. at 617, 625.) At precisely 16 seconds before impact with the West vehicle, Noviho's tractor started moving. (Id. at 618-19; see also Commonwealth Exhibit 19.) The data shows that the tractor traveled 197 feet over the course of 16 seconds at a top speed of 17 mph before the collision occurred. (Id. at 617-21.)

The Commonwealth's expert, Officer Kondras, presented the three possible scenarios for how and when Noviho entered the highway from his assumed position on the berm[21]; none of which was, in his opinion, safe given the speed of oncoming vehicles. (N.T. at 627.)

> [Noviho] either pulls out and immediately cuts over into the lane and is going 2 miles, 3 miles an hour[.] [O]r he slowly pulls out and does a . . . very slow, steady movement over. And then if he's halfway through it, he's going 8, 11 miles an hour.
> Or he drives up the shoulder . . . and at the last second before impact he cuts over and immediately into the right lane. He's going 15 to 17 miles an hour at that point and . . . he essentially would have cut right in front of Ms. West's vehicle as he gets over.

(Id. at 628-29.) Based upon this information, Officer Kondras opined that "clearly it was unsafe to pull out. There's no safe time." (Id. at 628.)

---

[21]As noted previously, the ECM established that the tractor was stopped but it could not verify whether it was on or off the highway. (N.T. at 615-17, 621, 626.) The logical assumption is that the tractor was pulled off onto the shoulder of the roadway. The alternative, stopping a vehicle in a lane of travel on a 65 mph highway at night, is almost too ludicrous even to suggest.

22

This electronic data was confirmed by the eyewitness testimony of Schlinkman who stated that the time and distance that elapsed from Ms. West's headlights illuminating the tractor and the collision was "[n]o more than a second" (N.T. at 387), "instantaneous" (Id. at 388-89), "maybe a car length and a half." (Id. at 390.) The other witness, Levisky, testified that she heard the crash *first* and then "saw the headlights hit whatever was in front of it." (Id. at 245; *see also* Id. at 249.) She could not even identify the object as another vehicle until after she had brought her car to rest in the grass median. (Id. at 250, 252.)

There was sufficient testimony to support the finding that the tractor was standing either on the highway, or on its berm, at 17 seconds prior to impact, and that sometime during the next 16 seconds, Noviho operated his vehicle from a dead stop onto the 65 mph highway before such movement could be made with safety.

### 4. Weight of the Evidence

Noviho also claims this Court's guilt determinations were against the weight of the evidence. This issue is waived, however, because Noviho failed to raise it properly at the conclusion of trial or in a post-sentence motion.

The Pennsylvania Rules of Criminal Procedure apply to the summary offenses in this case arising under the Motor Vehicle Code.[22] Accordingly, the Rules governing

---

[22]The case before this Court was a "court case" within the meaning of the Pennsylvania Rules of Criminal Procedure because Noviho was charged with felony offenses and summary offenses. Rule 103 defines the term "court case" as "a case in which one or more of the offenses charged is a misdemeanor, felony, or murder of the first, second, or third degree." Pa.R.Crim.P. 103. By contrast, "summary case" is defined as "a case in which the *only* offense or offenses charged are summary offenses." Id. (Emphasis added). The Comment to

23

post-trial practice are applicable here.[23] Rule 607 provides, in relevant part, that a claim that the verdict was against the weight of the evidence "shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; (3) or in a post-sentence motion." Pa. R.Crim.P. 607(a). Noviho did not move for a new trial on weight of the evidence grounds at the conclusion of trial nor did he file a post-sentence motion raising a weight of the evidence claim. As such, this claim is waived. **Commonwealth v. Walsh**, 36 A.3d 613, 622 (Pa. Super. 2012) (*citing* **Commonwealth v. Priest**, 18 A.3d 1235 (Pa. Super. 2011) (concluding that appellant's claim that the verdict was against the weight of the evidence was waived because it was not presented to the trial court in a post-sentence motion)). *See also* Pa. R.Crim.P. 607, Comment ("The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived.")).

Assuming, *arguendo*, that Noviho's weight of the evidence argument has been preserved for appellate review, it lacks merit. A claim that the verdict is contrary to the weight of the evidence "concedes that there is sufficient evidence to sustain the verdict,

---

Pa.R.Crim.P. 400 provides that "[i]f one or more of the offenses charged is a misdemeanor, felony, or murder, the case is a court case (see Rule 103) and proceeds under Chapter 5 of the rules. Ordinarily, any summary offenses in such a case, if known at the time, must be charged in the same complaint as the higher offenses and must be disposed of as part of the court case." Pa. R.Crim.P. 400 Comment (citations omitted). Chapters 5, 6 and 7 of the Criminal Rules govern procedures in court cases and, therefore, govern this case.

[23] I note that Pa.R.Crim.P. 720(D), which prohibits post-sentence motion practice in summary convictions following a trial *de novo*, did not apply because the summary convictions were not from a trial *de novo* after losing before the local district magistrate judge, *see* **Commonwealth v. Dixon**, 66 A.3d 794, 797 (Pa. Super. 2013), and because Rule 400 requires the summary offenses be addressed as court cases. Pa.R.Crim.P. 400, Comment.

24

but nevertheless contends that the trial judge should find the verdict so shocking to one's sense of justice and contrary to the evidence as to make the award of a new trial imperative." **Commonwealth v. Robinson**, 834 A.2d 1160, 1167 (Pa. Super. 2003). *See also* **Commonwealth v. Lewis**, 911 A.2d 558, 566 (Pa. Super. 2006).

Our Superior Court has explained the proper standard of review applicable to a challenge to the weight of evidence:

> [T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

**Commonwealth v. Shaffer**, 40 A.3d 1250, 1253 (Pa. Super. 2012) (*quoting* **Commonwealth v. Champney**, 574 Pa. 435, 444, 832 A.2d 403, 409 (2003)).

Considering the quality and quantity of the evidence in this case, as outlined above, there is no reason to reject the verdicts. This Court had the opportunity to see and hear the expert and lay witnesses and evaluated and determined the credibility and the weight of the evidence in favor of the Commonwealth and against Noviho. The verdicts in this case certainly do not shock this Court's sense of justice so as to make the award of a new trial imperative.

## C.    Motion *in Limine*

Noviho next claims the Court erred in granting the Commonwealth's motion *in limine*,

> including the decision to exclude the testimony of [Noviho's] expert witness prepared to testify to the reflective qualities of reflective tape placed on the rear of the truck, and an individual's ability to perceive and react to an obstacle, and allowing the Commonwealth's witnesses to opine as to whether the individual that ran into the back of the truck had time to perceive and react to the presence of the truck.

(Statement of Errors at ¶ 1.) This adverse evidentiary ruling by the Court allegedly violated Noviho's constitutional rights, and "necessarily negates essential elements of the Summary Offenses of which he was convicted." Id.

Admission of evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. **Commonwealth v. Begley**, 566 Pa. 239, 265, 780 A.2d 605, 620 (2001). An abuse of discretion requires "not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." **Commonwealth v. Charlton**, 902 A.2d 554, 559 (Pa. Super. 2006) (*quoting* **Commonwealth v. Widmer**, 560 Pa. 308, 322, 744 A.2d 745, 753 (2000)).

The admissibility of an expert opinion is governed by Pennsylvania Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical or other specialized knowledge is beyond that possessed by the average layperson;
(b) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. It has long been the law of this Commonwealth that "[t]he purpose of expert testimony is to assist the factfinder in grasping complex issues not within the knowledge, intelligence, and experience of the ordinary layman." **Commonwealth v. Page**, 59 A.3d 1118, 1135 (Pa. Super. 2013) (*quoting* **Commonwealth v. Begley**, 566 Pa. 239, 263, 780 A.2d 605, 621 (2001)). On the other hand, "[p]henomena and situations which are matters of common knowledge, may not be the subject for expert testimony." **Collins v. Zediker**, 421 Pa. 52, 53, 218 A.2d 776, 777 (1966).

At the start of trial, the Commonwealth presented a motion *in limine* seeking to preclude, *inter alia*, the proffered testimony of defense "human factors" expert, Mark Lee Edwards, Ph.D., that a reasonably alert driver would have been able to detect and respond to the presence of Noviho's tractor based on the conspicuity markings on the rear of the tractor alone. (Commonwealth Motion *in Limine* at ¶ 20.) The Commonwealth argued in its motion that this proffered expert testimony failed to satisfy the test of Pa.R.E. 702 because (1) the jury did not require Dr. Edwards' expertise in understanding this subject matter, and (2) his opinions would invade the province of the jury. (Id. at ¶¶ 21-24.)

Noviho objected to the motion on two grounds. First, he argued that "[h]uman factors experts have long been accepted as appropriate expert witnesses." (Defendant's Response to Commonwealth's Motion *in Limine* at ¶ 21.) In fact, our

27

research uncovered no Pennsylvania cases allowing human factors testimony in a criminal case.[24] Second, Noviho claimed "a lay person would have little or no knowledge regarding the properties of reflective tape and the ability to perceive." (Id.) To the contrary, as noted by our sister court in **Morningstar v. Hoban**, 55 Pa. D.&C.4th 225 (Allegh. Co. 2002), when excluding the proffered testimony of a human factors expert on the ability of a layperson to estimate speeds:

> There are few skills better known to an average person than those surrounding driving. This includes estimating the speed of cars all around each of us every day. Expert testimony attacking the estimates of speed provided by eyewitnesses such as these with ample experience and opportunity for observation is impermissible both because the subject is not beyond the knowledge and skill of a layperson and because to permit the testimony would intrude upon the jury's function of deciding credibility. The proper methodology for attacking such testimony is the time tested art of cross-examination and not through expert testimony.

Id. at 251.

I would add that also included among the driving skills of a layperson is the ability to observe and react to reflective markings on other vehicles. This is something within the common knowledge and experience of all drivers and does not require expert testimony to understand. *See* **Collins v. Zediker**, *supra* (expert opinion offered as to speed of a pedestrian's pace was reversible error as matter was within common

---

[24]There are a handful of reported appellate *civil* cases where human factors experts were permitted to testify. *See* **Reinoso v. Heritage Warminster SPE LLC**, 108 A.3d 80 (Pa. Super. 2015); **Mitchell v. Gravely Int'l, Inc.**, 698 A.2d 618, 620 (Pa. Super. 1997); **Riley v. Warren Mfg., Inc.**, 455 Pa. Super. 384, 392, 688 A.2d 221, 225 (1997); **Mackowick v. Westinghouse Electric Corp.**, 373 Pa. Super. 434, 442, 541 A.2d 749, 752 (1988), *aff'd*, 525 Pa. 52, 575 A.2d 100 (1990); **Smith v. Kelly**, 2009 WL 9101529 (Pa. Cmwlth. 2009). *See also* **Frey v. Harley Davidson Motor Company, Inc.**, 734 A.2d 1 (Pa. Super. 1999) (expert testimony on visibility conspicuity permitted).

knowledge and experience of jury); **Christiansen v. Silfies**, 446 Pa. Super. 464, 667 A.2d 396 (1995) (expert testimony concerning weather conditions at time and place of accident properly excluded because weather conditions involve matters of common knowledge that are easily described and understood by laymen, and there was eyewitness testimony regarding the density of fog and level of visibility at accident scene). *See also* **Commonwealth v. Robertson**, 874 A.2d 1200, 1207 (Pa. Super. 2005) (determining what areas of the body are vital is not a complex issue that would require medical testimony; "an ordinary layman could conclude without expert testimony that [the victim's] head, stomach, and neck are vital areas").

Based upon the case law and the facts of this case, I ruled that Noviho's human factors or conspicuity expert would be permitted to testify only to the existence of the reflective material on the truck and to the placement of the material on the tractor in compliance with the federal laws regarding such. (N.T. at 899-90.) The expert was precluded, however, from testifying as to the distances at which the reflective material could have or should have been visible to the West vehicle. (Id. at 900.) After reviewing the expert report, it was clear that this expert could not offer testimony with regard to the location, condition and/or type of headlights on the West vehicle, or the angle at which they shone on the rear of Noviho's tractor. (Id. at 900-01.) Nor could the expert testify to the specific road and lighting conditions at the time of the collision.

More importantly, there were two lay witnesses in this case, Levisky and Schlinkman, who testified to their ability to perceive the reflective markings on Noviho's tractor, a matter of common knowledge easily described and understood by ordinary

citizens. (*See* N.T. at 245, 249, 250-51, 261, 385.) The availability of firsthand observations from these eyewitnesses who were at the scene made the testimony of a human factors expert unnecessary and, indeed, permitting such testimony would have infringed on the jury's right to determine credibility. *See* **Commonwealth v. Delbridge**, 771 A.2d 1, 5-6 (Pa. Super. 2001).

Accordingly, following extensive argument by counsel, I ruled, on the record, that the Commonwealth's motion *in limine* to preclude the expert testimony of Dr. Edwards as to a driver's ability to perceive reflective markings on a tractor was granted as this was something every layperson with a driver's license could easily detail and comprehend. (*See* N.T. at 893-903.) This evidentiary ruling was not an abuse of the Court's discretion and Noviho's challenge to the ruling is without merit.

### D. Accident Scene Photographs

Lastly, Noviho argues that the Court erred "by excluding from evidence photographs taken at the scene of the accident showing the positioning of the truck at the scene of the accident, emergency triangles placed at the scene of the accident and that the truck in question was visible from a significant distance." (Statement of Errors at ¶ 2.) Again, Noviho claims this adverse evidentiary ruling by the Court violated his constitutional rights, and "necessarily negates essential elements of the Summary Offenses of which he was convicted." Id.

Although Noviho does not specifically identify the challenged photographs for the Court, a review of the record indicates that Defense Exhibits 11, 12 and 13 were

30

objected to by the Commonwealth and not admitted into evidence. (*See* N.T. at 493-500, 951-52.) I will assume these photographs form the basis of Noviho's evidentiary challenge.

The admission of photographs is largely within the discretion of the trial court and will not be reversed except for an abuse of discretion. **Commonwealth v. Lowry**, 55 A.3d 743, 753 (Pa. Super. 2012) (*citing* **Commonwealth v. Malloy**, 579 Pa. 425, 856 A.2d 767, 776 (2004)). Here, there was no abuse of discretion in refusing to admit into evidence, for conspicuity purposes, Noviho's photographs of his tractor, where the photographs, although taken on the night of the crash, did not accurately depict the scene of the collision or the conditions at the time of impact. Specifically, (1) the tractor was positioned on the berm as opposed to the right lane of travel, some distance from the point of impact, (2) the tractor was artificially illuminated, and (3) reflective triangles had been placed near the tractor following the crash. (N.T. at 494-99.) *See* **Commonwealth v. Iafrate**, 385 Pa. Super. 579, 586, 561 A.2d 1244, 1247 (1989), *rev'd on other grounds*, 527 Pa. 497, 594 A.2d 293 (1991) (no abuse of discretion in court's refusal to admit into evidence photographs purporting to show the placement of vehicles on the street at the time of the incident given the different lighting conditions, the different distances of the car from the curb, and the insufficient foundation laid for the photo depicting the defendant posed by a car); **Yachymiak**, 351 Pa. Super. at 364-65, 505 A.2d at 1025-26 (court did not abuse its discretion in excluding photographs due to its doubt that the lighting, brightness levels, relative heights, depths and distances sufficiently reproduced the observations of the police, thereby failing to establish the probative value of the photographs).

31

Noviho's Exhibits 11, 12 and 13 had limited probative value relative to the conditions at the time of the crash and were also potentially confusing and prejudicial to the jury. Therefore, they were properly excluded in this case.

## III. Conclusion

For the reasons set forth above, this Court respectfully requests that the appeal of Mawuyrayrassuna Emmanuel Yaogan Noviho be denied.

Accordingly, I enter the following:

32

# IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
# C R I M I N A L

COMMONWEALTH OF PENNSYLVANIA :
:
v. : No. 4200 - 2013
:
MAWUYRAYRASSUNA EMMANUEL :
YAOGAN NOVIHO :

# ORDER

AND NOW, this 7th day of April, 2015, the Court hereby submits this Opinion

pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

BY THE COURT:

DAVID L. ASHWORTH
JUDGE

I certify this document to be filed
in the Lancaster County Office of
the Clerk of the Courts.

Joshua G. Parsons
Clerk of the Courts

ATTEST

Copies to: Susan E. Moyer, Assistant District Attorney
Robert Daniels, Esquire, 218 Pine Street, P.O. Box 886, Harrisburg, PA
17108-0886